CRICHFIELD-LOEFFLER, INCORPORATED, A CORPORATION OF THE STATE OF NEW YORK, PLAINTIFF-RESPONDENT, v. JAMES J. TAVERNA, DEFENDANT-APPELLANT.

Submitted February term, 1924—Decided March 5, 1925.

Corporations—Sale of Stock—Contract Examined and Held not to Have Been a Subscription for Stock but One to Buy Stock, an Executory Contract, Upon Which Either Party May Stop Performance Subject to the Other Party's Right to Damages—Court Below Wrong in Giving Judgment for Purchase Price—Judgment Should Have Been for Difference Between Contract Price and Current Price of Stock.

On appeal from the District Court of Hoboken.

Before Justices KALISCH, KATZENBACH and LLOYD.

For the plaintiff-respondent, *Besson & Pellet, Otmar J. Pellet* and *Harlan Besson.*

For the defendant-appellant, *George J. McEwan.*

PER CURIAM.

This is an appeal from a judgment of the District Court of the city of Hoboken. The defendant below is the appellant. The suit was instituted upon a contract in writing, which reads as follows:

"The undersigned hereby purchases fifty shares of the capital stock of the Crichfield Co., Inc., a corporation organized under the laws of the State of New York, at ten [$10.00] dollars per share, par ten [$10.00] dollars, and agrees to pay for the same as follows:

\*   \*   \*   \*   \*   \*   \*   \*

It is understood and agreed that the certificates will be issued as soon as available provided the purchase price as aforementioned has been paid in full.

It is also understood and agreed that in the event proceedings to change the name of the corporation be commenced, that the shares purchased as aforementioned will be issued after proceedings to change the name have been completed, and that the certificates will then be issued in the new name.

In consideration of the agreement aforementioned, the said corporation hereby agrees to transfer the stock to the purchaser as aforementioned, upon performance on the part of the purchaser of the terms hereof.

JAMES J. TAVERNA,
*Purchaser,*
*Residence, 134 Central Ave., W. H., N. J.*

THE CRICHFIELD CO., INC.,
By JOHN C. LOEFFLER,
*President."*

The plaintiff tendered the stock mentioned in the agreement to the defendant, who refused to accept the same. The plaintiff sought to recover the full purchase price of the stock in an action instituted in the District Court of the city of Hoboken. The plaintiff claimed that, by virtue of the contract and the tender of the stock to the defendant, the defendant became liable for the full purchase price. This theory of the case was accepted by the District Court, which gave judgment for the full purchase price. The District Court held that, by virtue of the above agreement, the de-

fendant became a stockholder in the plaintiff corporation, and that it made no difference that no certificate of shares had been issued to the defendant. The decision of the District Court amounted to a holding that the contract was a subscription agreement. Upon an examination of the contract we have reached the conclusion that it is not a subscription agreement, but a contract for the sale of stock controlled by the law appertaining to the sale of goods. It does not necessarily follow that if a corporation sells its stock the agreement under which the sale is made is a subscription agreement. Whether it is a subscription agreement or not is a question for the determination of the court by an inspection of the contract. A corporation may have stock in its treasury which it can sell. There is nothing in the agreement to show that it was not a sale of stock which the corporation may have issued, bought back, and then resold under the agreement under consideration. We hold the agreement to be an executory contract. The law is that every party to a contract, wholly or partially executory on the part of the other party, always has the right to stop performance by the other party subject to that party's right to damages. *Bixler* v. *Finkle,* 85 *N. J. L.* 77. Repudiating a contract to sell goods or countermanding performance does not rescind the contract, but constitutes a breach of it. *Bixler* v. *Finkle, supra.* While there was tender of the stock in the present case there was no acceptance of it. If the breach of contract takes place before any of the goods have been delivered, the measure of the damages is the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract. Sales of Goods act, section 64(1), 2 *Comp. Stat., p.* 4662. And where there is an available market for the goods in question, the measure of damages, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market or current price when the goods ought to have been accepted. *Bixler* v. *Finkle, supra.*

In the facts agreed upon in the present case it is stipulated that for several weeks after the date of the contract the plaintiff sold the same kind of stock for the same price as set forth in the contract. There is no evidence in the present case that the goods in question were not manifestly of the kind for which there was an available market. The lack of this evidence takes the case out of section 64, subdivision 3 of the act relating to sales of goods. 2 *Comp. Stat., p.* 4662. For this reason we think the court erred in giving judgment for the purchase price of the stock. The judgment should have been one for damages based upon the difference between the contract price and the market or current price at the time the goods should have been accepted. As there was no evidence of the difference between the contract price and the market price, the judgment should have been one for nominal damages.

The result which we have reached on this point makes it unnecessary to consider the other ground for reversal urged by the appellant. The judgment is reversed. The case is sent back to the District Court of the city of Hoboken for retrial.