Sometime in 1925 or 1926 the United States district court for the district of New Jersey, appointed receivers for the Mausoleum Company of America, who took possession of its property — among its assets being a mausoleum. Rutherford H. Walker, who was largely interested and active in that company, made an offer to the receivers to take over the assets of the company, including the land and mausoleum building, which was then in the course of construction and apparently unfinished, which was accepted, and Walker promised to discharge the various outstanding obligations against the company, which included some outstanding preferred stock. To secure his promise, Walker was required to give a bond in the sum of $600,000 to be secured by a mortgage upon the mausoleum property. The receivers wanted some additional security for the performance of the obligations to be undertaken by Walker and demanded a surety company bond. Some difficulties stood in the way of obtaining such a bond and the premium to be paid was no small item. In the place thereof, Walker offered as surety the Hudson Heights Realty Company, which he owned. That company was an ordinary business corporation and the receivers questioned its legal capacity to become a surety. Finally, they accepted the joint bond of Walker and the Hudson Heights Realty Company. They conveyed the assets, including their title to the land and mausoleum building, to Walker and the Hudson Heights Realty Company. Walker contended, and testified, that the Hudson Heights Realty Company had no interest in the transaction other than as surety. In 1926, he caused to be formed a new corporation, known as the Fairview Mausoleum Company, to take over the assets acquired from the receivers of the Mausoleum Company of America. The certificate of incorporation shows that the capital stock of the company was subscribed for by Rutherford H. Walker, nine hundred shares; by Thaddeus L. Walker, fifty shares, and Aaron S.B. Walker, fifty shares. The minute book of the company contains a resolution accepting the offer of Rutherford H. Walker *Page 143 
to sell to the company all of the assets acquired from the receivers of the old company to include the land and Mausoleum Company in exchange for the entire issue of stock, one thousand shares, and directing the issuance of the stock in the manner indicated in the certificate. The certificates of stock were never actually issued, nor was the deed to the mausoleum premises ever delivered to the corporation; but, nevertheless, the business of the Fairview Mausoleum Company was carried on for a period of approximately ten years (just as though the premises had been conveyed to it) and it was regarded as the owner of the premises. It entered into possession of the property and presumably completed the mausoleum building. It was held out to the public as the owner, and many crypts and spaces in the mausoleum were sold by it and certificates of title were issued by it. These certificates were issued over a period of ten years and involved over $900,000. They were issued by Rutherford H. Walker, who practically ran, or managed, the company, as its president. Walker testified that he was under the impression that the property had been conveyed to the corporation; and if it had not, it should have been. He claimed that the Hudson Heights Realty Company had no interest in it other than to increase the security as aforesaid.
In April, 1936, the complainants were appointed receivers of the Fairview Mausoleum Company by this court. They took possession of the mausoleum lands and building, and have since remained in undisturbed possession. The individuals, who are its receivers, also have been appointed receivers of the Hudson Heights Realty Company. In the latter part of August, 1936, Rutherford H. Walker was adjudicated a bankrupt. The trustee in that proceeding has been made a party defendant to this suit by leave of the bankruptcy court. He has filed an answer and counter-claim. The answer substantially admits all of the allegations of the bill of complaint. The counter-claim seeks an accounting of moneys alleged to have been advanced to the Fairview Mausoleum Company by Walker, a conveyance of the stock of the *Page 144 
company pursuant to the agreement whereunder the assets acquired from the Mausoleum Company of America were to be conveyed to the Fairview Mausoleum Company, and asks that the federal receivers of the Mausoleum Company of America be decreed to surrender up the bond and mortgage to the trustee in bankruptcy for cancellation, upon payment to the holders of the preferred stock of that company of approximately $3,000, and that the mausoleum lands and premises be conveyed to the trustee in bankruptcy free and clear of any claims of the other defendants.
By consent, in open court, of all parties to the litigation, it was agreed to defer all matters of accounting and to submit for decision of this court the question as to whether the complainants, as receivers of the Fairview Mausoleum Company, were entitled to a decree that the equitable title and possession of the mausoleum lands and premises was in the Fairview Mausoleum Company from the time of the making and acceptance of the agreement in 1926 down to the time when the complainants, as receivers, qualified and took possession, and thereafter and until the present time in the receivers of the Fairview Mausoleum Company, and that Rutherford H. Walker, and his trustee in bankruptcy, hold the bare legal title, and should be compelled to convey it to complainants.
The trustee in bankruptcy, in his opening statement, referred to paragraph 13 of the bill and said that the bill was not clear to him; that the counter-claim which he filed was predicated on the fact that he deemed the bill to be a bill in the nature of a specific performance suit, and that the receivers, in asking that he be compelled to convey, would have to put him in the same position as trustee in bankruptcy of Rutherford H. Walker, as he would have been in at the time the contract was made, and that he did not think that that would be possible in view of the change in the values of the respective properties to be conveyed; and he objected to specific performance of the agreement at this time.
Apparently the trustee in bankruptcy regards the agreement made in 1926, whereby the assets acquired by Rutherford *Page 145 
H. Walker and the Hudson Heights Realty Company were to be conveyed to the Fairview Mausoleum Company in exchange for the issuance of the entire capital stock of the Fairview Mausoleum Company to Rutherford Walker and his nominees, as an agreement for the purchase and sale of stock. In my view, the contract in question was a contract of subscription for the stock of the corporation. The subscribers became stockholders of the company notwithstanding the fact that no certificate of stock had been actually issued.
Whether a contract is a subscription for, or a sale of stock, is a matter of construction and depends upon its terms and the intention of the parties. 4 Fletcher Cyclopedia Corp. (Perm.ed.) 27 § 1372. Cf. Crichfield-Loeffler, Inc., v. Taverna,4 N.J. Mis. R. 310; 132 Atl. Rep. 494; First Caldwell Oil Co. v.Hunt, 100 N.J. Law 308. A distinction between a subscription and a contract for a sale of stock is that the latter does not make the purchaser a subscriber nor does it make him a stockholder until it is executed by delivery of the stock and a transfer of the shares on the books of the corporation; while a subscription, as soon as made, ordinarily confers the rights and liabilities of a stockholder. Upon the making of the contract the subscribers became stockholders of the Fairview Mausoleum Company, and Walker was obligated to convey the legal title to the lands and premises to the corporation. In contemplation of equity the corporation acquired and became vested with an equitable estate in the land commensurate with that provided in the contract to be conveyed. The subscriber held the legal estate in the land as trustee for the corporation, to whom all the beneficial interest had passed. Moreover, it would appear that the company was controlled by the party with whom the contract was made and it was his duty to have conveyed the legal title to the lands to the corporation. Walker has not refused to convey; the conveyance was not made because of inadvertence. He always believed that the property had been conveyed and says it should have been. Equity regards that done which ought to have been done. 1 Pom. Eq. Jur. (4th ed.) 685 § 368. *Page 146 
Even though the bill were one for specific performance, equity would direct that it be decreed under the facts existing here. The corporation has been in possession of the premises under the agreement over a long period of time, and has dealt with the public as the owner thereof. The party contracting with the corporation bore a fiduciary relationship to it, and I do not believe that he or his successor in interest can claim any advantage arising from his failure to perform his duty.
I shall advise a decree to conform with the views herein expressed. *Page 147